1    J. Andrew Coombs (SBN 123881)
      *andy@coombspc.com*
2    Annie S. Wang (SBN 243027)
      *annie@coombspc.com*
3    J. Andrew Coombs, A. P. C.
      517 East Wilson Avenue, Suite 202
4    Glendale, California 91206
      Telephone: (818) 500-3200
5    Facsimile:  (818) 500-3201

6    Attorneys for Plaintiff Nike, Inc.

7

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

10
                                        )
11   Nike, Inc.,                        )   Case No. CV 07-05606 JF
                                        )
12                Plaintiff,            )   NOTICE AND MOTION FOR ENTRY OF
                                        )   DEFAULT JUDGMENT;
13        v.                            )   DECLARATIONS AND EXHIBITS IN
                                        )   SUPPORT THEREOF
14   Sean Andre Wofford, an individual and d/b/a  )
      Geared Up and Geared Up for Her and Does 1   )
15   through 10, inclusive,             )   Court: Hon. Jeremy Fogel
                                        )   Date:  March 14, 2008
16                Defendants.           )   Time:  9:00 a.m.
                                        )

17   TO THE COURT AND TO DEFENDANT:

18        PLEASE TAKE NOTICE that on, March 14, 2008, at 9:00 a.m., or as soon thereafter as the

19   matter may be heard in the Courtroom of the Hon. Jeremy Fogel, United States District Court

20   Judge, located at Courtroom 3, 5th Floor of the United States District Court, 280 South 1st Street,

21   San Jose, California 95113, Plaintiff Nike, Inc. ("Nike" or "Plaintiff"), will and hereby does move

22   the Court for entry of default judgment against Defendant Sean Andre Wofford, an individual and

23   d/b/a Geared Up and Geared Up for Her ("Defendant"), for statutory damages in the sum total of

24   One Hundred Twenty-Five Thousand Dollars ($125,000.00) and post-judgment interest.  Nike also

25   seeks entry of a permanent injunction prohibiting Defendant from further infringement of Nike's

26   trademarks.

27        By this Notice of Motion and Motion for Default Judgment, the Memorandum of Points

28   and Authorities attached thereto, and the Declarations of Annie Wang, David W. Simpson and

29   Heather Holdridge, and exhibits attached thereto, Nike requests that a default judgment be entered

30   based on the following points:

1. Defendant is not an infant, incompetent person, in the military service or otherwise exempted under the Soldier's and Sailor's Civil Relief Act of 1940.

2. Defendant has not appeared in the action.

3. This Notice and Motion for Default Judgment, along with all supporting papers is being served on Defendant on January 25, 2008, by placing a true and correct copy thereof in an envelope to be immediately sealed thereafter addressed to Defendant at the same addresses where service of process was completed.

4. Nike elects statutory damages under the Lanham Act.

5. Nike is entitled to judgment against Defendant based on violation of 15 U.S.C. §§ 1051 *et seq.* Nike does not elect to pursue its claims for trademark dilution or unfair competition.

6. The principal amount of the judgment sought as against Defendant is statutory damages in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000.00), as set forth in the accompanying Memorandum of Points and Authorities, supporting declarations and exhibits, and as authorized by 15 U.S.C. §§ 1116-1117. Plaintiff also seeks post-judgment interest calculated at the statutory rate pursuant to 28 U.S.C. § 1961(a), and entry of a permanent injunction prohibiting Defendant from further infringing any of Nike's trademarks.

7. This motion is based on this Notice of Motion, Motion for Entry of Default Judgment and accompanying Memorandum of Points and Authorities, the Declarations, and exhibits attached thereto, the exhibits and evidence to be presented at the hearing hereon, the pleadings, records and papers on file herein and such other matters and evidence as may be presented at or before the hearing.

DATED: January 25, 2008                      J. Andrew Coombs, A Professional Corp.

                                             By: _____
                                                  J. Andrew Coombs
                                                  Annie S. Wang
                                             Attorneys for Plaintiff Nike, Inc.

# TABLE OF CONTENTS

**INTRODUCTION AND STATEMENT OF FACTS**     1

A.    Plaintiff Nike     1

B.    Defendant's Infringing Activities     2

C.    This Action     3

**ARGUMENT**     3

A.    Default Judgment Is Properly Entered Against Defendant     3
       1.    Nike's Complaint Sufficiently Charges Defendant With Trademark Counterfeiting     4
       2.    All of the Other Eitel Factors Have Been Met     7

B.    Nike Has Met the Procedural Requirements for Entry of a Default Judgment     8

C.    Nike Is Entitled to a Permanent Injunction     9

D.    Nike Is Entitled to Statutory Damages of $125,000.00 Based on Defendant's Willful Infringement of Its Trademarks     9
       1.    Defendant's Conduct Was Willful     10
       2.    Defendant Willfully Infringed Upon Nike's Trademarks     10
       3.    Nike Is Entitled to $25,000.00 For Each of Five Trademarks Based on Defendant's Willful Counterfeiting of Its Trademarks     10

E.    Nike Is Entitled to Interest on the Judgment     12

**CONCLUSION**     12

Declaration of Heather Holdridge     13

Declaration of David W. Simpson     19

Declaration of Annie Wang     21

**TABLE OF AUTHORITIES**

**CASES**

Academy of Motion Picture Arts & Sciences v. Creative House
Promotions, Inc., 944 F.2d 1446, 1454-55 (9th Cir. 1991)...............................5

AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir. 1979).....................5, 7

Carte Blanche (Singapore) Pte. v. Carte Blanche International,
888 F.2d 260, 269 (2nd Cir. 1989)...............................................................12

Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)................................4

Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986).....................................3-4, 7-8

Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) ...........................4

Kloepping v. Fireman's Fund,
1996 U.S. Dist. LEXIS 1786 (N.D. Cal. 1996) ...............................................4, 8

Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985)...................4

Lindy Pen Co. v. Bic Pen Co., 982 F.2d 1400, 1406 (9th Cir. 1993)...........................10

M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005)....................5-6

Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950)............................7-8

Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank,
515 F.2d 1200, 1206 (5th Cir. 1975) ..........................................................4

State of Idaho Potato Commission v. G &T Terminal Packaging, Inc.,
425 F.3d 708, 721 (9th Cir 2005)...........................................................11-12

TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987)...................1, 7

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)..............................5

Vigil v. Walt Disney Co., 1995 U.S. Dist. LEXIS 15560, at *5
(N.D. Cal. Oct. 16, 1995)....................................................................4

**STATUTES**

15 U.S.C. § 1051. .........................................................................2, 4

15 U.S.C. § 1059        ......................................................................3

15 U.S.C. § 1065        ......................................................................2

15 U.S.C. § 1114        ......................................................................4

15 U.S.C. § 1115(a).........................................................................4

15 U.S.C. § 1116(d) ...................................................................................................11

15 U.S.C. § 1117(a)(c)...................................................................................1, 7, 9, 11

15 U.S.C. § 1125 .........................................................................................................2

28 U.S.C. § 1961(a)...................................................................................................12

Fed. R. Civ. P. 8(b)(6)..............................................................................................4, 7

Fed. R. Civ. P. 54(c) ...................................................................................................9

Fed. R. Civ. P. 55(a)(b)............................................................................................8-9

Cal. Bus. & Prof. Code, § 17200...............................................................................3

## INTRODUCTION AND STATEMENT OF FACTS

Defendant Sean Andre Wofford, an individual and d/b/a Geared Up and Geared Up for Her ("Defendant") is involved in the manufacture, purchase, distribution, offering for sale and/or sale of counterfeit footwear to the general public of illegitimate goods infringing Plaintiff Nike, Inc.'s ("Nike" or "Plaintiff") trademarks. In flagrant disregard for the procedures of this Court, Defendant has failed to appear in response to valid and effective service of process upon him.

Defendant's default has deprived Nike of the ability to prove up a specific amount of actual damages. Accordingly, Nike relies on the statutory damages provisions contained in the Lanham Act for trademark counterfeiting. Although Defendant's conduct is such as to warrant imposition of damages for willful counterfeiting (of up to $1,000,000 per trademark counterfeited), Nike limits its request to $25,000.00 for each of just five of the trademarks for which it has attached evidence of infringement, Declaration of Heather Holdridge ("Holdridge Decl.") at ¶¶ 6-12, Ex.s A-E; Declaration of David W. Simpson ("Simpson Decl.") at ¶ 5.

Now, Nike seeks judgment, including an award of statutory damages in the amount of $125,000.00 pursuant to Section 1117(c) of the Lanham Act. Nike also seeks post-judgment interest and entry of a permanent injunction prohibiting Defendant and his representatives from further infringement of Nike's trademarks.

### A. **Plaintiff Nike**

Nike is a corporation duly organized and existing under the laws of the State of Oregon, having its principal place of business in Beaverton, Oregon. Complaint ("Compl.) at ¶ 3.[1]

Nike is engaged in the manufacture, design and sale of footwear, apparel, and related accessories. Id. at ¶ 6. Products manufactured and sold by Nike bear the NIKE trademark, or an arbitrary and distinctive trademark which has come to be known as the Swoosh Design trademark, or a composite trademark consisting of the word NIKE and the Swoosh Design. Id. Nike uses these trademarks on shoes and apparel as trademarks of Nike's high quality products. Id. Nike sells in excess of $4,500,000,000 a year in merchandise bearing its distinctive trademarks. Id.

All products described above are sold with one or more of the Nike trademarks. Compl. at ¶ 7. Nike adopted and used the NIKE and Swoosh Design trademarks in 1971. Id. Nike

---

[1] As a result of Defendant's default, the allegations of the Complaint are deemed admitted. TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) (factual allegations of the Complaint, except those relating to the amount of damages are taken as true). See also the supporting declarations and exhibits hereto.

registered the NIKE trademark in block letters on May 8, 1984, Registration No. 1,277,066 in Class 25 for apparel. Id. Nike registered the Swoosh Design on July 3, 1984, Registration No. 1,284,385 for apparel in Class 25. Id. Nike registered the composite mark of Nike and the Swoosh Design trademark on May 10, 1983, for apparel in Class 25. Id. And, more recently, Nike has registered the NIKE AIR trademark, Registration No. 1,591,006, for apparel in Class 25. Id.

Additionally, Nike obtained registrations for word marks incorporating the word "air", including AIR JORDAN, AIR MAX and AIR TRAINER. Id. at ¶ 8. These are some, but by no means all, of Nike's federal trademark registrations. Id. Each of The Nike Trademarks have been registered with the United States Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. § 1051). Simpson Decl. at ¶ 4, Ex. F; Declaration of Annie Wang ("Wang Decl.") at ¶ 8. The trademarks identified in Exhibit "F" to the Simpson Decl. are collectively referred to herein as the "Nike Trademarks".

All of the Nike Trademarks are current and in full force and effect. Many of the marks have become incontestable pursuant to 15 U.S.C. § 1065. Compl. at ¶ 8. Additionally, all of the Nike Trademarks qualify as famous marks pursuant to 15 U.S.C. § 1125. Id.

The Nike Trademarks are distinctive when applied to high quality apparel, footwear and related merchandise, and signify to the purchaser that the products come from Nike and are manufactured, whether by Nike itself, or its licensees, to the highest quality standard. Id. at ¶ 9. Nike's products have been widely accepted by the public and are enormously popular, as demonstrated by billions of dollars in sales each year. Id.

This enormous popularity is not without cost, as evidenced by the increasing number of counterfeiters in the United States and around the world. Id. at ¶ 10. Indeed, it is a modern irony that companies measure success by the extent of their counterfeiting problem. Id.

**B.    Defendant's Infringing Activities**

Defendant is an individual residing in San Jose, in the State of California. Compl. at ¶ 4. Defendant is a seller of counterfeit Nike branded shoes through a retail outlet located in San Jose, California. Id. Defendant does business in this judicial district through offers and sales of counterfeit shoes within this district. Id. at ¶ 1.

Defendant offered for sale a number of different styles of shoes bearing Nike trademarks. Holdridge Decl. at ¶¶ 5-12. The shoes sold by Defendant were also examined by Nike and

determined to be counterfeit as the labeling and other features of the shoes were incorrect or inconsistent with authentic product.  Simpson Decl. at ¶ 5.

By engaging in this unauthorized conduct, Defendant has acted in willful disregard of laws protecting Nike's Trademarks.  Through such active manufacturing, purchasing, distributing, offering of sale and selling such unlicensed and counterfeit footwear, Nike is irreparably damaged through consumer confusion, dilution and tarnishment of its valuable trademarks.  Compl. at ¶ 1.

**C.    This Action**

Nike filed this action on or about November 5, 2007.  Nike's Complaint alleges violation of 15 U.S.C. §§ 1059., *et seq.*, California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, *et seq.* and California Business and Professions Code, § 14330 (trademark infringement, dilution and unfair competition).

The Summons and Complaint were served on Defendant on or about November 16, 2007.  Wang Decl. at ¶ 2.  Nike filed the Proof of Service with the Court on or about December 11, 2007, and the Clerk entered Defendant's default on or about December 18, 2007.  Id. at ¶ 5. The Defendant has not filed a responsive pleading or otherwise appeared in this action. Id. at ¶ 4.

## ARGUMENT

**A.    Default Judgment Is Properly Entered Against Defendant**

In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit outlined the following factors to determine whether to grant default judgment:

(1) the substantive merits of plaintiff's complaint;

(2) the complaint's sufficiency;

(3) the amount of money at stake;

(4) the possibility of prejudice to plaintiff if relief is denied;

(5) the possibility of dispute as to any material facts;

(6) whether default resulted from excusable neglect; and

(7) the policy of the Federal Rules favoring decisions on the merits.

Id. at 1470-72.

Nike meets each element.

1.      **Nike's Complaint Sufficiently Charges Defendant with Trademark Counterfeiting**

The first two Eitel factors, involving the substantive merits of the claim and the sufficiency of the complaint, require that Plaintiff's allegations "state a claim upon which [it] may recover." Kloepping v. Fireman's Fund, 1996 U.S. Dist. LEXIS 1786 at *5 (N.D. Cal. 1996). citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Upon a defendant's default, the factual allegations of the complaint, other than those relating to the amount of damages sustained, are deemed admitted. Fed. R. Civ. P. 8(b)(6); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

The complaint sufficiently pleads Nike's claim for trademark counterfeiting pursuant to 15 U.S.C. §§ 1051, et seq. Nike owns registered trademarks and the Defendant distributed footwear bearing identical copies of its trademarks, all without Nike's authorization. Compl. at ¶¶ 6-57; Holdridge Decl. at ¶¶ 5-12, Ex.s A-E. Defendant did so intentionally and his product was likely to cause confusion or mistake to the public regarding the affiliation, sponsorship, endorsement or approval of the counterfeit product. Compl. at ¶¶ 6-57. These allegations state claims for trademark counterfeiting upon which Nike may recover.

To succeed on a claim under the Lanham Act, a plaintiff must establish that its mark is valid and has been infringed. 15 U.S.C. § 1114. Registration of a mark on the principal register is "prima facie evidence… of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce…" 15 U.S.C. § 1115(a); Vigil v. Walt Disney Co., 1995 U.S. Dist. LEXIS 15560, at *5 (N.D. Cal. Oct. 16, 1995); Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985) (registration by the trademark holder constitutes *prima facie* evidence of a protected interest with respect to the good specified in the registration). Relevant registrations and their present validity and effectiveness are alleged in the Complaint and herein. Compl. at ¶¶ 6-10; Simpson Decl. at ¶ 4, Ex. F; Wang Decl. at ¶ 8.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     The test for infringement of a federally registered trademark under the Trademark Act of 1946 ("Lanham Act") is whether the alleged infringing act creates a likelihood of confusion. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992); Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1454-55 (9th Cir. 1991). In determining likelihood of confusion, the Ninth Circuit has adopted the Sleekcraft test, balancing the following factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the mark; and (8) likelihood that the parties will expand their product lines. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir. 1979). In addition, when the alleged infringer knowingly adopts a mark similar to another's, some courts presume that the public will be deceived. M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005). These factors all demonstrate Defendant's infringement of Nike's trademarks:

     1.    Strength of the Trademark: Nike's marks are exceptionally strong as they identify Nike's high quality products such that they have acquired secondary and distinctive meaning in the minds of consumers throughout the world as a direct result of Nike's longstanding use, sales, advertising and marketing. Compl. at ¶ 28.

     2.    Proximity of goods: The likelihood of confusion is heightened where as here, the goods at issue are "related or complementary." M2 Software, Inc., 421 F.3d at 1082. Nike has alleged that it lawfully advertises and sells products, including apparel, footwear, watches, jewelry and related merchandise, and that Defendant has, with actual and constructive notice of Nike's federal registration rights, and long after Nike established its rights in the Nike Trademarks, adopted and used the Nike Trademarks in conjunction with the manufacture, purchase, distribution, offer of sale and sale of footwear in the State of California and in interstate commerce. Compl. at ¶¶ 15-16. Defendant's products include footwear – a class of goods for which Nike has numerous trademark registrations.

3.    Similarity of the Marks:  Defendant has sought to capitalize on Nike's strong marks by copying them with no variation from their authorized versions with the intent to palm off such goods as those of Nike.  Defendant has caused to be imported, distributed, offered for sale and sold footwear bearing one or more of the Nike Trademarks without the authorization of Nike.  Compl. at ¶¶ 17, 45.

4.    Evidence of Actual Confusion:  Purchases made by third-parties of Defendant's unauthorized, counterfeit product evidences actual confusion as to their source and origin. Compl. at ¶¶ 17-19.

5.    Marketing Channels Used:  Defendant uses a retail outlet to sell his infringing goods.  Compl. at ¶¶ 1, 4.  Nike also uses retail outlets as a channel through which to market legitimate product – through a number of Nike operated stores and third party retailers, a matter of which the Court can, if necessary, take judicial notice.  Nike has a substantial retail presence, resulting in significant overlap in advertising markets, which increases the likelihood of confusion.  M2 Software, Inc., 421 F.3d at 1083.

6.    Type of Goods and Care Likely to be Exercised by the Purchaser:  Defendant has duplicated Nike's products so that consumers cannot differentiate between illegal and legitimate products at the point of purchase and tend to believe that Defendant's footwear and related merchandise are authorized, sponsored, approved or associated with Nike.  Compl. at ¶ 29. Modern consumers, who are aware of the sensitivity of quality footwear look to Nike's marks for assurance of Nike's developed and maintained goodwill and reputation for high quality products.

7.    Defendant's Intent in Selecting the Mark:  Defendant's intention to confuse the public is self-evident.  When a person knowingly adopts a mark identical to another's mark, the Court may infer that person's intent to confuse.  M2 Software, 421 F.3d at 1085 (willful use creates a presumption of public deception).

8.    Likelihood of Expansion of Product Lines:  Nike is already using its trademarks in the class of goods and services exploited by Defendant.  Furthermore, Defendant's intention to

Hanover Trust Co., 339 U.S. 306, 314 (1950). Defendant was served the Summons and Complaint and though Defendant initially contacted Plaintiff's counsel, he has since become non-responsive. Wang Decl. at ¶¶ 2-3. Defendant has not filed a responsive pleading, or otherwise appeared in this action. Id. at ¶ 4. Defendant has had ample time to try to resolve this matter, but has elected not to appear. Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect.

The facts of this case are dissimilar from those in Eitel, in which the defendant's failure to answer constituted excusable neglect because the defendant believed the litigation was over, due to a final settlement agreement that subsequently dissolved. The defendant in Eitel, soon thereafter, filed an answer and counterclaim, even though it was beyond the 20-day period. Eitel, 782 F.2d at 1472. The Defendant in the present case have failed to act despite having all opportunity to do so, with full knowledge that a lawsuit was filed against him, and that it was his responsibility to respond.

e.    Policy for Deciding on the Merits:  The seventh Eitel factor takes into account the preference of the Federal Rules for deciding cases on the merits. Eitel, 728 F.2d at 1472. However, "this preference, standing alone, is not dispositive." Kloepping v. Fireman's Fund, supra, 1996 U.S. Dist. LEXIS 1786 at *10. "While the Federal Rules favor decisions on the merits, they also allow for the termination of cases before the court can reach the merits....[t]hus, the preference to decide cases on the merits does not preclude a court from granting "default judgment." Id. Under Fed. R. Civ. P. 55 (a), default judgments are allowed. Here, Defendant failed to answer Nike's Complaint or to otherwise appear in the action. Allowing Defendant, who failed to defend this action, to proceed to trial would greatly prejudice Nike. Judgment against Defendant is proper at this time.

**B.    Nike Has Met The Procedural Requirements for Entry of a Default Judgment**

Fed. R. Civ. P. 55(b) provides for a court-ordered default judgment following entry of default by the court clerk under Rule 55(a). Kloepping v. Fireman's Fund, supra, 1996 U.S.

Dist. LEXIS 1786 at *3-4. For judgment to enter, Plaintiff must show: (1) when and against which party default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. Fed. R. Civ. P. 55(b)(2). All of these requirements have been met, as set forth in Nike's Notice of Motion for Default Judgment, further supporting the appropriateness of Nike's request.

Nike has complied with Fed. R. Civ. P. 54(c) and 55. In the pending action, Nike served the Defendant on or about November 16, 2007. Defendant failed to respond to the Complaint. Further, Defendant is not a minor, incompetent lacking adequate representation, in the military, or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. Nike does not request relief that differs from or exceeds that prayed for in the Complaint.

**C.    Nike Is Entitled to a Permanent Injunction**

Nike has alleged in its Complaint, and has presented specific evidence, that Defendant has infringed its trademarks by, *inter alia*, willfully and knowingly manufacturing, distributing, offering for sale and/or selling counterfeit shoes featuring the Nike Trademarks. The Complaint further alleges that unless enjoined, said infringements will continue with irreparable harm and damage to Nike. Compl. at ¶ 21.

**D.    Nike Is Entitled to Statutory Damages of $125,000.00 Based on Defendant's Willful Infringement of Its Trademarks**

Section 1117 of the Lanham Act allows a plaintiff to elect either statutory damages or actual damages for trademark infringement. 15 U.S.C. § 1117. Nike elects statutory damages. Since Defendant acted willfully, Nike is entitled to increased statutory damages awards of up to One Million Dollars per counterfeit mark per type of goods or services sold, offered for sale, or distributed. 17 U.S.C. § 1117(c)(2). Thus, Nike is seeking a reasonable award under the Lanham Act of One Hundred Twenty-Five Thousand Dollars ($125,000.00) for the willful

infringement of its trademarks by the Defendant.

### 1.    Defendant's Conduct Was Willful

Defendant has not elected to dispute any of Nike's allegations in the Complaint. Moreover, the limited record that Nike is in a position to adduce (because it was denied an opportunity to conduct discovery as a result of Defendant's default), provides ample evidence of Defendant's willfulness.

Willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as "deliberate," "false," "misleading," or "fraudulent" to conduct that meets this standard. Lindy Pen Co. v. Bic Pen Co., 982 F.2d 1400, 1406 (9th Cir. 1993). Here, Nike has alleged in its Complaint, Defendant's willfulness. Compl. at ¶¶ 1, 23, 30, 41, 47, 53. Additionally, Defendant featured an extensive selection of Nike knock-off products prominently in his store despite their counterfeit nature, maintained a substantial inventory of counterfeit shoes, and fled the scene when being served with a cease and desist letter on behalf of Nike. Holdridge Decl. at ¶¶ 5-12.

### 2.    Defendant Willfully Infringed Upon Nike's Trademarks

Nike's ownership of the Nike Trademarks cannot be disputed. Simpson Decl. at ¶ 4, Ex. F; Wang Decl. at ¶ 8. In any event, Nike's ownership of these trademarks is uncontested as a result of Defendant's default. The Nike Trademarks were duplicated in the Defendant's counterfeit merchandise. Compl. at ¶ 29; Holdridge Decl. at ¶¶ 5-12. This evidence indicates Defendant's infringement of Nike's trademarks by systematically selling unauthorized product incorporating the Nike Trademarks. Further, Nike is seeking to recover from only a partial trademark list from that alleged in the Complaint and from those appearing on Defendant's counterfeit merchandise. Thus, Nike is entitled to the reasonable award requested.

### 3.    Nike Is Entitled to $25,000.00 for Each of Five Trademarks Based on Defendant's Willful Counterfeiting of Its Trademarks

Nike seeks Twenty-Five Thousand Dollars ($25,000.00) per trademark for a total of One Hundred Twenty-Five Thousand Dollars ($125,000.00) for Defendant's infringement despite

there existing cause for recovery based on more trademarks.[2] This is well within the statutory limits provided for pursuant to the Lanham Act and within the limits applicable to acts of innocent infringement. This amount is properly awarded given (i) Defendant's willful conduct; and (ii) Defendant's blithe disregard for the process of this Court.

Section 1117(c) provides, in pertinent part:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of title 15) in connection with the sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subjection (a) of this section, an award of statutory damages for any such use in connection with the sale, or distribution of goods or services in the amount of-
>
> > (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> >
> > (2)    if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2).

In determining such an award, the Plaintiff must establish that:

> (1) Defendants intentionally used a counterfeit mark[3] in commerce- defining "counterfeit mark" as, an identical, non-genuine mark, in use by Plaintiff and registered in the same class of goods complained of without Plaintiff's prior authorization;

---

[2] Despite Defendant's lack of response to Plaintiff's enforcement of its rights and all allegations in the Complaint deemed true based on Defendant's default, Exhibit A to the Complaint lists a number of valid trademarks and here, Plaintiff is seeking recovery based on only five, further evidencing the reasonableness of Plaintiff's statutory damages request.

[3] Section 15 U.S.C. 1117 (c) refers to the definition in 15 U.S.C. § 1116 (d)(1)(B) as one that "is registered on the principal register in the United States Patent and Trademark Office for such foods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."

(2) Knowing the mark was counterfeit;

(3) In connection with the sale, offering for sale, or distribution of goods; and

(4) Its use was likely to confuse or deceive.

State of Idaho Potato Commission v. G &T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005).

As complained of in the Complaint, Defendant's use constituted counterfeiting as he used identical, non-genuine marks, of marks already in use and registered in the proper class of goods by Nike, on goods that were likely to cause confusion or deception to the consuming public with knowledge.  Compl. ¶¶ 1, 17-19, 30, 45-47.

If this Court were to award Nike only minimal damages, then Defendant in this action, as well as future defendants, would be encouraged to ignore any legal actions taken by Nike against them.  The granting of the requested statutory damage award at this time will act to deter Defendant (and others) from violating Nike's trademarks and otherwise violating Nike's rights with relative impunity.

Defendant has chosen to permit the entry of his default.  Because of Defendant's default, Nike has been left with no effective choice but to seek an award of statutory damages.  Based upon a portion of Defendant's systematic, willful and felonious acts, Nike is entitled to an award of statutory damages of One Hundred Twenty-Five Thousand Dollars ($125,000.00) against Defendant.

**E.    Nike Is Entitled to Interest on the Judgment**

Nike is entitled to post-judgment interest.  "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Post-judgment interest shall be calculated pursuant to the statutory rate.  Id.; Carte Blanche (Singapore) Pte. v. Carte Blanche International, 888 F.2d 260, 269 (2nd Cir. 1989).

## CONCLUSION

For the foregoing reasons, Nike respectfully requests that Nike be awarded permanent injunctive relief enjoining Defendant from further violation of its rights.  In addition, Nike

requests Judgment in Nike's favor in the amount of One Hundred Twenty-Five Thousand

Dollars ($125,000.00) in Lanham Act statutory damages and post-judgment interest in

substantially the form of the submitted proposed orders.

DATED:  January 25, 2008                    J. Andrew Coombs, A Professional Corp.

By: _____
        J. Andrew Coombs
        Annie Wang
    Attorneys for Plaintiff Nike, Inc.

## DECLARATION OF HEATHER HOLDRIDGE

I, HEATHER HOLDRIDGE, declare as follows:

1.      I am a private investigator, licensed by the state of California, license No. PI20517. I am the owner and principal of Brand Security Corporation ("BSC"). I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would competently testify under oath as follows.

2.      I have been an investigator in the state of California since 1987. I have over 6,000 hours of combined formal instruction and on-the-job training in general investigative practices. I have over 2,000 hours of training in identifying and differentiating various trademarks. This training was given to me by, among others, Terry Damerel, Director of Licensing of the Pasadena Tournament of Roses Association, Michael Drucker of the College Licensing Company, Robert S. Ogden, former Vice President of the Walt Disney Company, J. Andrew Coombs, former Executive Counsel for the Walt Disney Company, Lynn Loeb, former counsel for Warner Bros., and Lisa A Uriguen, President of Trademark Management.

3.      I am a member of the California Association of Licensed Investigators, the International Anti-Counterfeiting Coalition and the International Trademark Association. I have attended conferences and training seminars which were administered by the California Association of Licensed Investigators and the International Anti-Counterfeiting Coalition. I have worked on over 150 cases involving the identification of authentic and counterfeit trademarked, copyrighted and/or patented goods in the past year. I have worked with, among others, the Los Angeles Police Department, the Los Angeles Sheriff's Department and the Office of the District Attorney for the County of Los Angeles in trademark enforcement investigations and prosecutions.

4.      I have testified in support of temporary restraining orders obtained in federal court on counterfeiting matters. I have also provided testimony in numerous criminal cases involving counterfeit goods. I am frequently retained by companies to investigate potential theft and/or counterfeiting of their registered trademarks, copyrights, and patents. This formal and informal

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

training has given me experience in identifying and differentiating between goods bearing genuine trademarks, copyrights and other proprietary rights, and infringements and counterfeits.

5.    On or about July 11, 2007, I instructed three BSC employees to travel to a retail urban clothing store called Geared Up For Her located at 946 East Santa Clara Street in San Jose, CA 95133. I am informed and believe the store is a tan, single-story commercial building with red trim. I am informed and believe the complex consists of multiple tenants, each with a different address. I am informed and believe the address is depicted over the front glass entrance in white numbers.   True and correct copies of photographs of the exterior of Geared Up For Her are attached hereto as Exhibit A.

6.    Upon entry into Geared Up For Her, I am informed and believe one of the BSC employees observed a retail store with racks of clothing displayed throughout. I am also informed and believe this BSC employee observed three styles of counterfeit Nike shoes on display for sale in front of the entrance. I am informed and believe this BSC employee selected a Nike Air Jordan type shoe and requested a size from a Hispanic female employee who is best described as being approximately 27 years of age, 5'5", 135 lbs. with black hair and brown eyes. I am informed and believe the Hispanic female employee went into a back storage room to retrieve the selected shoe and left the door open. I am informed and believe the BSC employee noted 8 boxes of Nike Air Force 1 shoes and 3 boxes of Air Jordan shoes inside of the storage room. I am informed and believe the BSC employee paid a total of $37.85 but was unable to obtain a receipt or business card. Before departing the store, I am informed and believe the Hispanic female employee stated that they had a men's clothing store one block over. Attached hereto as Exhibit B are true and correct copies of photographs of the pair of Nike Air Jordan shoes and its packaging purchased from this location.

7.    On or about that same date, I instructed BSC employees to travel to Geared Up's second location at 964 East Santa Clara Street in San Jose, CA 95113. I am informed and believe the store is best described as being a yellow, two-story commercial building occupied by multiple tenants, each with a different address. I am informed and believe the name of the store

is depicted on a black banner affixed to the glass display window in white letters. I am also informed and believe that the address is depicted over the front glass entrance in black numbers. Attached hereto as Exhibit C is a true and correct copy of a photograph of the exterior of the second location of Geared Up.

8.      I am informed and believe a second BSC employee entered the store and observed approximately 24 pairs of counterfeit Nike Air Force 1 shoes and 60 pairs of counterfeit Air Jordan shoes on display for sale in front of the glass entrance and on the floor. I am informed and believe there was a Hispanic female employee who is best described as being approximately 32 years of age, 5'6", 130 lbs. with brown hair and brown eyes in the store. I am informed and believe the Hispanic female employee stated that their whole inventory was out and instructed the BSC employee to pick out the desired shoe. I am informed and believe the BSC employee selected one pair of Nike Air Jordan type shoes and paid a total of $75.76 but was unable to obtain a receipt or business card. Attached hereto as Exhibit D are true and correct copies of pictures of the Nike Air Jordan shoes and its packaging purchased from the second location of Geared Up.

9.      I am informed and believe that after leaving Geared Up, the BSC employees confirmed with Nike, Inc. that both pairs of shoes purchased from Geared Up For Her and Geared Up were counterfeit.

10.     On that same date, I am informed and believe that the BSC employees returned to Geared Up and were able to contact Mr. Sean Andre Wofford, the owner of Geared Up and Geared Up For Her. I am informed and believe the BSC employees noted that all of the shoes that were on display for sale were gone. I am informed and believe that when asked about the shoes, Mr. Wofford stated the following:

- What shoes?
- I don't sell any shoes.
- I don't know what you are talking about.
- You bought some today?

- Are you sure you bought them from here?
- Well if you did it I was not aware of it.
- Okay.
- I got a phone call about you guys and I liquidated the situation.
- Well, I actually put them in my warehouse.
- We can go over there and you can take them if you want.
- Follow me.

11.    I am informed and believe that at that time, the BSC employees followed Mr. Wofford to Geared Up For Her and he continued to state the following:

- Here they are.
- That's all I have.
- Come on now.
- I am giving you all I have.
- All the ones in the other store got sold.
- Well, I am a wholesaler.
- That's what I do, I wholesale shoes.
- Of course I knew they are fake.
- Come on now, I aint going to tell you where I bought them.
- It don't matter to me what happens to me.
- As a matter of fact, you guys came on a slow day.
- I sell Nike shoes by the case.
- I'm just being real with you.
- I told you.
- I sold them all.
- You can take these shoes right here.
- Well, you have evidence that I did sell them so take me to court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12.    I am informed and believe the BSC employees then served Mr. Wofford with a cease and desist letter and he agreed to voluntarily surrender 3 pairs of Nike Air Jordan shoes and 8 pairs of Nike Air Force 1 shoes.  I am informed and believe that Mr. Wofford acknowledged that the shoes were counterfeit.  Attached collectively hereto as Exhibit E is a Receipt for the voluntary surrender of shoes, signed by Mr. Wofford and copies of photographs of a same of the Nike Air Force 1 shoes.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23 day of January, at Santa Clarita, California.

HEATHER HOLDRIDGE

Nike v. Wofford, et al.: Notice and Motion for Default
Judgment                                          - 8 -

## DECLARATION OF DAVID W. SIMPSON

I, David W. Simpson, declare the following:

1.    I am the Director of Security for Nike, Inc. ("Nike"). I have been employed in this capacity for 14 years. As a part of my duties as Director of Security, I am charged with the directing of anti-counterfeiting enforcement activity for footwear, apparel and accessories. In that capacity I regularly review the Nike product line so that I am familiar with legitimate Nike products. Except as otherwise stated, I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would competently testify under oath as follows.

2.    Nike, an Oregon Corporation having its principal offices in Beaverton, Oregon, United States of America, designs, markets, and sells footwear, apparel, and related accessories. In 1971, BRS, Inc., an Oregon corporation and the predecessor of Nike, adopted and commenced use of the word NIKE, an arbitrary distinctive emblem which has come to be known as the Swoosh Design, and a composite mark consisting of the word NIKE and the Swoosh Design as trademarks for shoes and apparel. The NIKE, NIKE AIR, NIKE and Swoosh Design, and the Swoosh Design trademarks were subsequently developed, and adopted and used by NIKE. In addition to the aforementioned Designs what has become known as the Jump Man Design, filed as Basketball Player Design, was also developed by Nike.

3.    Nike has duly registered and renewed the following trademarks with the United States Patent and trademark Office:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| NIKE | 1,277,066 | May 8, 1984 |
| SWOOSH Design | 1,284,385 | July 3, 1984 |
| NIKE and SWOOSH Design | 1,237,469 | May 10, 1983 |
| SWOOSH Design | 977,190 | January 22, 1974 |
| NIKE AIR | 1,571,066 | December 12, 1989 |
| AIR JORDAN Design | 1,742,019 | December 22, 1992 (Class 18 and 25) |
| JUST DO IT | 1,875,307 | January 24, 1995 |
| SWOOSH | 1,200,529 | July 6, 1982 |
| NIKE | 1,214,930 | November 2, 1982 |
| NIKE AIR w/SWOOSH device | 1,284,386 | July 3, 1984 |
| NIKE AIR | 1,307,123 | November 27, 1984 |

| SWOOSH device | 1,323,343 | March 5, 1985 |
|---|---|---|
| NIKE w/SWOOSH device | 1,325,938 | March 19, 1985 |
| AIR JORDAN | 1,370,283 | November 12, 1985 |
| AIR MAX | 1,508,348 | October 11, 1988 |
| Jump Man device | 1,558,100 | September 26, 1989 |
| NIKE SHOX | 2,970,902 | July 19, 2005 |

4.      True and correct copies of all of the aforementioned trademark registrations are collectively attached hereto as Exhibit F.

5.      I examined the two pairs of Air Jordan shoes which were purchased by BSC from Geared Up For Her and Geared Up. I also examined a sample pair of Air Force 1 shoes which were part of the surrendered inventory. The Air Jordan shoes purchased from Geared Up For Her are white, black and blue "Air Jordan" type shoes with copies of the Jump Man device trademark. The packaging also contained copies of the AIR JORDAN and Jump Man device trademarks. Following examination, it was determined the shoes are counterfeit as the labeling was inconsistent with that of authentic product. The Air Jordan shoes purchased from Geared Up are gray and white "Air Jordan" type shoes with copies of the Jump Man device trademark. The packaging also contained copies of the AIR JORDAN and Jump Man device trademarks. Following examination, it was determined the shoes are counterfeit as the labeling was inconsistent with that of authentic product. The Air Force 1 shoes are white "Air Force I" type shoes with copies of the SWOOSH, NIKE AIR w/SWOOSH and NIKE w/SWOOSH device trademarks. The packaging also contained copies of the NIKE and SWOOSH device trademarks. Following examination, it was determined the shoes are counterfeit as the labeling was inconsistent with that of authentic product.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___ day of January, 2008, at Beaverton, Oregon.

DAVID W. SIMPSON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF ANNIE WANG

I, ANNIE WANG, declare as follows:

1.    I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California. I am an attorney for Plaintiff Nike, Inc. ("Nike" or "Plaintiff") in an action styled <u>Nike, Inc. v. Wofford, et al</u>. I make this Declaration in support of Plaintiff's Motion for Entry of Default Judgment. Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2.    I am informed and believe that on or about November 16, 2007, Plaintiff served the Summons and Complaint on Defendant Sean Andre Wofford, an individual and d/b/a Geared Up and Geared Up for Her ("Defendant").

3.    To my knowledge, Defendant has never contacted Plaintiff's counsel.

4.    To my knowledge, Defendant has not filed a responsive pleading, or otherwise appeared in this action.

5.    I am informed and believe that on or about December 11, 2007, my office caused to be filed the proof of service for Defendant. On or about December 18, 2007, the Clerk entered Defendant's default.

6.    I am informed and believe that Defendant is not an infant or incompetent person.

7.    I am informed and believe Defendant stated that he was not a member of the United States military during personal service of the Summons and Complaint which occurred on or about November 16, 2007. Based upon this information, I am informed and believe Defendant is not currently serving in the military.

8.    I request, pursuant to Federal Rules of Evidence, Rule 201(b) that the Court take judicial notice of copies of the Nike registrations mentioned in the Declaration of David W. Simpson which have been attached hereto as Exhibit F.

9.      I am informed and believe (and as reflected on proofs of service attached to the moving papers), that the Notice of Motion and supporting papers were served on the Defendant where service of process was effected, on January 25, 2008.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of January, 2008, in Glendale, California.

ANNIE WANG